**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**C. L. KING & ASSOCIATES, INC.,**
                                        **Plaintiff,**

        **v.**                                                    **1:18-CV-785**
                                                                  **(TJM/DJS)**

**THE NORTHWESTERN MUTUAL LIFE**
**INSURANCE COMPANY,**

                                **Defendant.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**


### DECISION & ORDER

Plaintiff C.L. King & Associates, Inc. ("C.L. King") alleges that Defendant The

Northwestern Mutual Life Insurance Company ("Northwestern") received fraudulent

conveyances from William F. Nicklin at the expense of his creditors.  As Nicklin's creditor,

C.L. King seeks to recover payments Nicklin made to Northwestern, which had loaned him

money against life insurance policies.  Defendant has filed a motion to dismiss Plaintiff's

claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7).  The parties

have briefed the issues and the Court has determined to decide the matter without oral

argument.

## I.    BACKGROUND

William F. Nicklin, not a party to this case, was a customer of C.L. King and

involved in "a trading strategy which relied heavily on the use of margin credit" that he

obtained from Plaintiff.  Plaintiff's Amended Complaint ("Am. Compl."), dkt. # 12, at ¶ 8.

As a result of this trading strategy, Nicklin's account value decreased by over forty million

dollars between December 2011 and April 2012.  Id. at ¶ 11.  Because he had purchased

the securities in his account on margin with money borrowed from Plaintiff, Nicklin began

to receive "margin calls" from the New York Stock Exchange and Plaintiff.  Id. at ¶¶ 12-16.

These calls required Nicklin to add more money or securities to his account to offset the

decreased value of the securities.  Id.  Between May 3 and May 15, 2012, Plaintiff sent

Nicklin a number of letters informing him of his obligation to add funds and warning of the

imminent liquidation of his account.  Id. at ¶¶ 16, 18.  Nicklin lacked the cash to meet

these demands and failed to add to his account.  Id. at ¶ 17.  After C. L. King liquidated

the securities in Nicklin's account to satisfy his option contracts, a debt of $13,097,946.12

remained.  Id. at ¶ 20.  C.L. King demanded payment on the obligation.  Id. at ¶ 21.  On or

about August 9, 2012, after Nicklin failed to pay this amount, Plaintiff commenced

arbitration against him before the Financial Industry Regulatory Authority ("FINRA").  Id. at

¶ 22.  Due to Nicklin's alleged delaying tactics, the parties did not complete the FINRA

arbitration until November 26, 2016.  Id. at ¶¶ 23-24.  The arbitration panel awarded

Plaintiff the entire outstanding balance plus five percent annual interest from August 9,

2012 until paid in full.  Id.  at ¶ 24.  On March 3, 2017, as the result of a special

proceeding, the Hon. Eileen Bransten of the Supreme Court of New York confirmed the

FINRA arbitration award.  Id. at ¶¶ 25-26.  The court entered judgment in the amount of

$16,227,099.28 on May 17, 2017, inclusive of interest.  Id. at ¶ 27.

    Nicklin had five life insurance policies with Defendant Northwestern at the time he

liquidated his account; his wife was the beneficiary.  Id. at ¶ 28.  Nicklin had taken out

"policy loans" against those insurance policies.  Id. at ¶ 29.  A policy loan, Plaintiff alleges,

does not create a debtor-creditor relationship between the policy holder and the life

insurance company because Nicklin had no obligation to pay those loans back.  Id. at ¶

30.  Or or about June 5, 2012, Nicklin allegedly contacted Northwestern through his

insurance agent "to identify the Policy Loans he should repay."  Id. at ¶ 31.  Defendant

responded by advising Nicklin to make payments on three of his policies totaling $1.5

million.  Id. at ¶ 32.  On June 6, Nicklin instructed his bank to institute a wire transfer in

that amount to Defendant "as soon as possible"; the bank complied on June 7.  Id. at ¶¶

33-34.  Between December 26, 2012 and March 18, 2013, while the FINRA arbitration

was pending, Nicklin made additional payments to Defendant totaling $853,000.  Id. at ¶¶

35-36.  Plaintiff contends that Nicklin made these transfers to prevent his creditor–C.L.

King–from recovering the loans Plaintiff made to Nicklin.  Id. at ¶ 37.  He made these

transfers, Plaintiff alleges, with full knowledge of his debt to C.L. King.  Id. at ¶ 38.  The

amended complaint further alleges that the policy loan repayments to Defendant were part

of "a systematic effort by Nicklin to try to evade" his credit obligations to Plaintiff.  Id. at ¶

40.  This "scheme" involved transfers of other assets to family members, insurance

purchases, and payments to another creditor.[1]  Id. at ¶¶ 40-52.  On or about January 5,

2015, Nicklin's advisory firm, NSB, sought Chapter 11 bankruptcy protection in the United

States Bankruptcy Court for the Southern District of New York.  Id. at ¶ 53.

---

[1]These transfers are the subject of separate litigation pending before the Supreme
Court of the State of New York, Albany County and the United States District Court for the
Northern District of New York.  Am. Compl. at ¶¶ 42, 49, 51.

Plaintiff filed a complaint in the Supreme Court of the State of New York, Albany County on June 5, 2018. Plaintiff alleged that Nicklin's payments to Defendant constituted fraudulent conveyances in violation of New York law. Plaintiff's State Court Complaint, dkt. # 2. Defendant removed the case to this Court based on diversity of citizenship pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. After Defendant filed a motion to dismiss, Plaintiff filed the instant Amended Complaint. The Amended Complaint contains five counts. Count I alleges a constructive fraudulent conveyance pursuant to New York Debtor and Creditor Law § 273. Count II alleges a constructive fraudulent conveyance pursuant to New York Debtor and Creditor Law § 273-a. Count III alleges a constructive fraudulent conveyance pursuant to New York Debtor and Creditor Law § 274. Count IV alleges an intentional fraudulent conveyance pursuant to New York Debtor and Creditor Law § 276. Count V seeks attorneys fees and disbursements for intentional fraudulent conveyance pursuant to N.Y. Debtor and Creditor Law § 276-a. Defendant has moved to dismiss that Amended Complaint. See dkt. # 21.

## II.  LEGAL STANDARD

Defendant argues that Plaintiff's Complaint fails to state a claim upon which relief could be granted, even if all factual allegations were proved true. In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "To survive a motion to dismiss, a

4

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

Additionally, Plaintiff's claims are all based on fraud.[2]  Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Id.  This pleading standard is a "heightened" one where generalized allegations do not suffice.  Spool v. World Child Int'l Adoption Agency, 20 F.3d 178, 184 (2d Cir. 2008).  Even in those areas where particularity is not required, a court "'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'"  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)).  A party may establish this "'strong inference of fraud . . . either by (a) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  Id. at 290-91 (quoting Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

Defendant also argues that Plaintiff failed to join an indispensable party.  Federal

_____

[2]Plaintiff argues that the Court should not hold its claims under DCL §§ 273, 273-a, and 274 to the heightened pleading standard of Rule 9(b) because they do not include an "intent to defraud" element.  Plaintiff's Memorandum in Opposition to the Motion to Dismiss the Amended Complaint ("Pl.'s Mem. in Opp."), dkt. # 24, at 7-8; see Paradigm BioDevices, Inc. v. Viscogliosi Bros., 842 F. Supp 2d 661, 667 (S.D.N.Y. 2012).  However, the particularity requirement specifically applies to "alleging fraud or mistake."  Fed. R. Civ. P. 9(b).  "Intent" is listed as an example of a condition of the mind that a party may allege generally, not as a limitation on the types of fraud to which the Rule applies.  See id.

Rule of Civil Procedure 12(b)(7) allows for dismissal of a claim for failure to join a party under Rule 19. Defendant argues that Plaintiffs failed to join Nicklin, a required party under Rule 19(a)(1). When joinder of a required party is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b).

## III.    DISCUSSION

Defendant seeks dismissal on various grounds, which the Court will address in turn. Defendant first argues that all of Plaintiff's claims under the New York Debtor and Creditor Law ("DCL") should be dismissed because Plaintiff has not alleged that the transfers in question were made without a lack of fair consideration. In addition to seeking dismissal on this basis, Defendant also offers alternative grounds for why Plaintiff's claims under particular sections of the statute should be dismissed. The Court will first address the general grounds Defendant offers and then address the other bases for dismissal in turn.

### A.    Lack of Fair Consideration

To allege claims sufficiently under DCL §§ 273, 273-a, and 274, Plaintiff must plausibly allege that the conveyances in question were made "without fair consideration." New York law provides that fair consideration is given for property when in exchange "as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied." DCL § 272. Alternatively, fair consideration exists where property is "received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property." Id.

Defendant argues that Nicklin's policy loan repayments do not qualify under this

6

standard because they satisfied an antecedent debt that grew out of loans made against insurance policies.  Central to Defendant's argument is the claim that Nicklin's policy loans were "bona fide debt" he was obligated to repay.  Id. at 7.  Defendant primarily relies on Black v. Comm'r of Internal Revenue, T.C. Memo 2014-27, 2014 Tax Ct. Memo LEXIS 28 (2014).  Black considered policy loans similar to those at issue in this case.  See Id. at *1. The Tax Court found that the policy provisions were "indicative of bona fide debt," and concluded that "[f]or Federal income tax purposes, [the taxpayer's] life insurance policy loans were true loans."  Id. at *2.  Defendant argues that Nicklin's conveyances were made to satisfy an existing debt obligation and therefore not constructively fraudulent as a matter of law because he merely preferred one creditor over another.  See, e.g., HBE Leasing Corp. v. Frank, 48 F.3d 623, 634 (2d Cir. 1995) ("even the preferential repayment of pre-existing debts to some creditors does not constitute a fraudulent conveyance").

Plaintiff maintains that the policy loans were not "true loans" and Nicklin's payments therefore did not satisfy an antecedent debt.  Nicklin borrowed against the future proceeds of the policies; any balance due would be subtracted from the value of the policy that the insurer paid out.  Courts have found that such an arrangement is not the equivalent of a loan.[3]  "Money borrowed from an insurance company upon the policy does not create a

---

[3]The distinction between policy loans and other loans comes clear in the estate context:

> Ordinarily, a loan from a bank creates a debt for which the borrower is personally liable, and upon his death, the debt becomes an obligation of his estate (Matter of Stafford, 278 App. Div. 612; Matter of O'Meara, 193 Misc. 790).  If specific property has been pledged as collateral security, the bank can satisfy its claim from the collateral pledged or make claim directly against the estate (Matter of Jones, 81 N.Y.S. 2d 386; Matter of Reinhold, 68 N.Y.S. 2d 347).  If the estate's obligation is discharged by resort to the proceeds of insurance policies held as collateral, the

debtor and creditor relationship." Schwartz v. Seldon, 153 F.2d 334, 335 n.3 (2d Cir. 1945). "The so-called liability of the policy holder never exists as a personal liability, it never is a debt, but is merely a deduction in account from the sum that the [insurer] ultimately must pay." Bd. of Assessors of the Par. of Orleans v. N.Y. Life Ins. Co., 216 U.S. 517, 522 (1910); see also Wagner v. Thieriot, 197 N.Y.S. 560, 564 (App. Div. 1922) (policy holder does not "stand[] in the same relation to the insurance company as an ordinary debtor."). Payments made on a policy loan do not reduce a debt; they restore value to the policy that the insurance company ultimately pays out. If the debtor does not pay or fails to repay all of the money borrowed before the policy is paid, his beneficiaries receive less of the policy proceeds. They do not have an obligation to repay the funds from the estate.

Using this understanding, Nicklin's policy loans were not debt obligations and the

---

beneficiaries of such polices, by operation of general equitable principles, are subrogated to the bank's claim against the estate, and are presumptively entitled to reimbursement for the diminished proceeds (Friedlander v. Scheer, 1 Misc. 2d 899, affd. 281 App. Div. 808; Matter of Stafford, 287 App. Div. 612; supra; Matter of Cummins, 200 Misc. 467).

The only exception to this general rule is where the decedent has clearly manifested a specific intention to have the debt satisfied solely from the security, freeing his estate from any obligation to repay the loan. Thus, when an insurance company lends money on its policies, paragraph (g) of subsection 1 of section 155 of the Insurance Law specifies that the policy shall be the "sole security" for advances thereon by the insurer, so that the insurance company may not look to the general assets of the estate, and the beneficiary has no right of subrogation (Wager v. Thieriot, 203 App. Div. 757, affd. 236 N.Y. 588; Matter of Hayes, 252 N.Y. 148. When the loan is from a bank, however, the bank is not so restricted, for it takes the policies as "collateral security", and, as pointed out in Chamberlin v. First Trust & Deposit Co. (172 Misc. 472, 475), collateral security means security *additional* to, rather than in lieu of, the personal obligation of the borrower.

Walzer v. Walzer, 1 A.D. 2d 482, 483-84 (1st Dept. 1956) (emphasis in original).

payments he made did not satisfy an antecedent debt.[4]  While <u>Black</u> sets forth what

appears to be a bright-line rule, it must be read in context.  The Tax Court addressed

whether the policy loan interest qualified as taxable income when the loan was satisfied by

the proceeds of the policy.  <u>See</u> <u>Black</u>, 107 T.C.M. (CCH) 1147 at *3.  For tax purposes,

because the returns on the policy had not yet been taxed, the loans were treated as "true

loans."  <u>Id.</u> at *4.  The Tax Court treated them as such because "[a] contrary result would

permit policy proceeds . . . to escape tax altogether."  <u>Id.</u> (quoting <u>Atwood v. Comm'r of

Internal Revenue</u>, 77 T.C.M. (CCH) 1476 at *2).  On the other hand, <u>Schwartz</u>, which

addressed claims that a debtor had repaid policy loans "while he was insolvent and with

intent to defraud creditors," found that "[m]oney borrowed from an insurance company

upon the policy does not credit a debtor and creditor relationship.  The so-called 'loan' is

really an 'advancement' and merely reduces the amount he company must ultimately pay."

<u>Schwartz</u>, 153 F.2d 334, 335 and n.3.

Plaintiff has alleged with particularity that Nicklin made the policy loan payments

without fair consideration.  The Amended Complaint alleges that Nicklin had no obligation

---

[4]Defendant argues in its reply memorandum that, even if the policy loans are not "true loans," there was no fraudulent conveyance because Northwestern did not exercise "dominion or control" over the assets conveyed.  <u>See</u> Defendant's Memorandum in Reply, dkt. # 25-4, at 5-7.  This argument primarily relies on <u>Brown Publishing Co. v. AXA Equitable Life Ins. Co.</u>, 519 B.R. 13 (E.D.N.Y. 2014), for the proposition that Northwestern was not a "transferee."  However, that case concerned the application of 11 U.S.C. § 550. Section 550 of the bankruptcy code allows recovery of fraudulent conveyances from an "initial transferee."  In contrast, New York's DCL deals specifically with "conveyances" regardless of the recipient.  "Transferee," as used in the DCL, merely refers to the recipient of a conveyance.  The DCL does not distinguish between "initial" or other transferees.  <u>See</u> N.Y. Debt. & Cred. Law § 276-a.  Furthermore, the DCL allows a creditor to seek relief from "any person except a purchaser for fair consideration without knowledge of the fraud."  <u>Id.</u> at § 278.

9

to make the payments he made because policy loans do not create a debtor-creditor relationship. Am. Compl. at ¶ 30. In the absence of this obligation, no antecedent debt was satisfied by the conveyances. Additionally, Plaintiff alleges that Nicklin sought Defendant's advice on how best to protect his assets from Plaintiff, his creditor, as part of a "scheme" to avoid his debt obligation. Id. at ¶¶ 31-32, 40. This allegation, accepted as true, shows a lack of good faith. Good faith is a requirement of fair consideration under DCL § 272. Courts may find a lack of good faith where one knows that the conveyance "will hinder, delay, or defraud others" or when it is made "as part of a series of transactions evidently devised to protect his assets from attachment." Chen v. New Trend Apparel, Inc., 8 F.Supp.3d 406, 448 (S.D.N.Y. 2014). Defendant's argument that there was fair consideration because Nicklin's "indebtedness [was] reduced on a dollar for dollar basis" fails to rebut Plaintiff's allegations that both parties to the conveyances lacked good faith. The good faith of both the transferor and transferee is "an indispensable condition in the definition of fair consideration." Stout St. Fund I, L.P. v. Halifax Group, LLC, 48 N.Y.S. 438, 443 (App. Div. 2017) (quoting Julien J. Studley, Inc. v. Lefrak, 412 N.Y.S.2d 901, 905 (App. Div. 1979)).

The Court finds that Plaintiff has plausibly alleged a lack of good faith in the policy loan transactions. The Court will deny the motion on these grounds.

**B.    Count 1**

Defendant next argues that Plaintiff's claim in Count 1 brought pursuant to Section 273 of the DCL should be dismissed because Plaintiff has not alleged Micklin's insolvency at the time of transfer. Section 273 of the DCL provides that conveyances made without fair consideration "by a person who is or will be thereby rendered insolvent [are] fraudulent

10

as to creditors without regard to his actual intent." DCL § 273. As addressed above, the Court finds that Plaintiff has plausibly alleged that Nicklin did not make the payments to Defendant for fair consideration.

The only other element of Section 273 relevant to this motion is Nicklin's insolvency at the time of the conveyances. "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." DCL § 271. Some courts have held that "when a transfer has been made for no consideration, the courts recognize a rebuttable presumption of insolvency and fraudulent transfer, and the burden then shifts to the transferee to overcome that presumption." Chen, 8 F.Supp.3d at 445; see also Battlefield Freedom Wash, LLC v. Song Yan Zhuo, 51 N.Y.S.3d 527, 529-30 (App. Div. 2017) (applying the presumption of insolvency to transfers made without fair consideration). However, the Second Circuit has expressed skepticism towards this presumption and declined to give it dispositive weight. See U.S. v. Watts, 786 F.3d 152, 165 (2d Cir. 2015).

Plaintiff plausibly alleges Nicklin's insolvency and the Court need not apply the presumption of insolvency. Plaintiff alleges that "Nicklin knew that he did not have sufficient assets to satisfy" the margin calls on his account with C.L. King. Am. Compl. at ¶ 17. In a fraud case, a plaintiff may allege "facts peculiarly within the opposing party's knowledge" on information and belief, but such "allegations must be accompanied by a statement of facts upon which the belief is founded." Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 1003 (2d Cir. 1988). Moreover, the Rule permits a party to plead "'malice, intent, knowledge, and other condition of mind' . . . 'generally'," as "it would be unworkable

and unfair to require great specificity in pleading scienter, since 'a plaintiff cannot be expected to plead a defendant's actual state of mind.'" Id. at 1004 (quoting FED. R. CIV. P. 9(b); Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d at 957, 962 (2d Cir. 1987)). Nicklin's alleged actions around the time his C.L. King account was subject to margin calls are factual allegations supporting the inference that he could not satisfy his obligations to Plaintiff. In December 2011, when "his trading strategy began to fail," Nicklin allegedly placed 90% of his interest in a newly formed LLC into a grantor-retained annuity trust ("GRAT") and transferred more than $6 million in securities to the LLC. Amend. Complt. at ¶¶ 41-42. Plaintiff alleges other transfers of real property and funds to a trust in his wife's name. Id. at ¶¶ 45-49. These assets, placed by Nicklin "beyond the reach of his creditors" in trusts, were no longer available to satisfy the margin calls. Plaintiff also alleges that Nicklin discussed his insolvency with an investment customer after the liquidation of his C.L. King account, relating that:

> I put my private equity holdings in the name of Riverlife Investments and that found its way into GRATS. . . . Everything that was not in my C L King portfolio went into Riverlife/GRATS except [shares in an LLC], and some raw land and a 40 acre produce farm . . . [Other investments] all ended up in the GRATS too. Thus I do not own them.

Id. at ¶ 44 (brackets in original). It is immaterial for the purposes of Plaintiff's claim under DCL § 273 whether Nicklin, as Plaintiff alleges, placed his assets in GRATS for the purpose of evading his obligations to C.L. King. As they were no longer available to satisfy his debts to Plaintiff, he was insolvent when he made the conveyances to Northwestern in June 2012, December 2012, and March 2013. The Court will therefore deny the motion in this respect.

### C. Count 2

12

Defendant next contends that Plaintiff's claims in Count 2, which allege a violation of Section 273-a of the DCL, should be dismissed. That statute provides:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

DCL § 273-a. "To prevail under" this statute, a plaintiff must "demonstrate that" the person conveying the property "was a defendant in an action for money damages (or had a judgment docketed against [it]) at the time of the underlying conveyance, that the resulting judgments remained unsatisfied and that the underlying conveyances were made without fair consideration[.]" Murin v. Estate of Schwalen, 31 A.D.3d 1031, 1035 (3rd Dept. 2006).

Plaintiff has plausibly alleged these elements. As addressed above, Nicklin allegedly made the conveyances to Northwestern without receiving fair consideration; he had no debt to the insurer that he had to repay. Plaintiff alleges, and Defendant does not dispute, that Nicklin was a defendant in the FINRA arbitration after August 9, 2012. Am. Compl. at ¶¶ 22, 61. C.L. King was the plaintiff in the arbitration. Id. The Hon. Eileen Bransten, in the Supreme Court of the State of New York, confirmed the arbitration and entered judgment against Nicklin on May 17 or 19, 2017. Id. at ¶¶ 25-27, 62. Plaintiff also alleges that Nicklin has failed to satisfy this judgment. Id. at ¶ 62.

Plaintiff has alleged with particularity that the five transfers made on

13

December 26, 2012 and March 18, 2013 were fraudulent as to C.L. King.[5]  Plaintiff also alleges that Micklin made these transfers after Plaintiff commenced the FINRA arbitration.  Further, Plaintiff alleges that Defendant has not satisfied the judgment. As Plaintiff has plausibly alleged that there was no fair consideration, that the transfers were fraudulent as to Plaintiff, and that Plaintiff here was the plaintiff in the FINRA action, Plaintiff has alleged with sufficient particularity a fraudulent transfer as described in § 273-a.  The Court has already rejected Defendant's argument that Plaintiff has failed to allege a lack of fair consideration.  Defendant argues that the "initial" payments on June 7, 2012 cannot be the subject of a § 273-a claim because Nicklin made them before the FINRA arbitration began.  Id. Defendant is correct, however the Amended Complaint specifically seeks to avoid only the "Subsequent Transfers" under § 273-a.  Am. Compl. at ¶ 63.  The Court will therefore deny the motion in this respect as well.

### D.    Count 3

Defendant also seeks dismissal of Plaintiff's third count, which alleges a violation of DCL § 274.  Section 274 is similar to § 273 in that it declares conveyances made without fair consideration fraudulent as to creditors.  N.Y. Debt. & Cred. Law § 274.  However, instead of insolvent transferors, § 274 prohibits such conveyances "when the person making [the conveyance] is engaged or is about to engage in a business or transaction for which the property remaining in his hands

---

[5]These transfers, termed the "Subsequent Transfers" in the Amended Complaint, were payments on the policy loans in addition to the initial June 7, 2012 payment of $1,500,000.  Am. Compl. at ¶ 35.  The "Subsequent Transfers" totaled $853,000.  Id.

after the conveyance is an unreasonably small capital." Id.  Under this statute, "[a]

transfer is a constructive fraudulent conveyance if it is made without fair

consideration and . . . the transferor will be left with unreasonably small capital."

MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co., 101

F.Supp. 913, 936 (S.D.N.Y. 1995).

Defendant's argument here rests primarily on an assertion that "Plaintiff fails

to allege that the money used to repay the loans . . . w[as] related in any form or

fashion to a business engagement."  However, the Debtor and Creditor law does

not focus on the specific source of the  funds used to repay the loans.  Plaintiff

alleges that Nicklin engaged in the business of investing in securities for his own

personal account.  Am. Compl. at ¶ 9.  He was also the principal and registered

investment advisor of NSB Advisors, LLC ("NSB").  Id. at ¶ 10.  Nicklin's alleged

contact with a customer regarding his insolvency suggests he was still actively

engaged in this business with his customers around the time of the transfers at

issue.  See id. at ¶ 44.  Furthermore, the numerous other alleged transfers in

Nicklin's "scheme" indicate he was at least still engaged in business on his own and

his wife's behalf.  The allegations are sufficiently specific to identify the relation

between the business and the transactions.  Plaintiff's allegations satisfy this

element.

Plaintiff must also allege that the conveyances left Nicklin with

"unreasonably small capital" for his business.  "The DCL does not define

'unreasonably small capital,' but it has been construed to mean 'a financial

condition short of equitable insolvency[,]' where one 'is technically solvent but

15

doomed to fail.'" In re Chin, 492 B.R. 117, 129 (E.D.N.Y. 2013) (quoting MFS/Sun Life Trust-High Yield Series, 910 F.Supp. at 944). As explained above, Plaintiff plausibly alleges Nicklin's insolvency at the time the transfers were made. If having "unreasonably small capital" is a condition short of insolvency, it follows that one who is insolvent necessarily has unreasonably small capital to carry on the business he is engaged in. See ABN AMRO Bank, N.V. v. MBIA Inc., 17 N.Y.3d 208, 228 (2011) (holding that allegations of insolvency support a cause of action under DCL § 274). The Court will therefore deny the motion in this respect as well.

## E.    Count 4

Plaintiff next seeks dismissal of Count 4, which alleges violation of DCL § 276. To state a claim under this statute, a plaintiff must plead with particularity "actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors." N.Y. Debt. & Cred. Law § 276. A plaintiff may rely on "badges of fraud" indicative of such intent in making such a claim. In re Sharp Intern. Corp., 403 F.3d 43, 56 (2d Cir. 2005). Badges of fraud include inadequate consideration for the conveyance, the transferor's insolvency as a result, and suspicious timing or "existence of a pattern after the debt had been incurred." Donald Dean & Sons, Inc. v. Xonitex Systems Corp., 656 F.Supp.2d 314, 328 (N.D.N.Y. 2009) (quoting Royal Palm Senior Investors, LLC v. Carbon Capital II, Inc., 2009 WL 1941862 at *6 (S.D.N.Y. 2009)).

Defendant argues that Plaintiff failed to allege the "badges of fraud" necessary to state a claim under § 276. As addressed above, however, Plaintiff has adequately alleged that Nicklin made the conveyances were made for

16

inadequate consideration while he was insolvent. While insolvency is not an element of § 276, a transfer resulting in insolvency is a badge of fraud. Plaintiff alleges that "Nicklin knew that he did not have sufficient assets to satisfy" the margin calls from C.L. King in May 2012, prior to the conveyances at issue. Am. Compl. at ¶ 17. While this suggests that Nicklin was already insolvent at the time he made the transfers, that claim also contains a reasonable inference that Nicklin became insolvent as a result of his entire "scheme to evade creditors" that included those payments to Defendant. Id. at ¶¶ 39-40. Furthermore, this "scheme," as alleged, displays the existence of a pattern after the debt had been incurred. Plaintiff alleges that, beginning in 2011 when his trading strategy began to fail, Nicklin began attempting to evade his debt obligations to C.L. King. Id. at ¶ 41. A pattern of moving his assets outside of Plaintiff's reach is evident from the numerous other transfers alleged between December 2011 and June 2012. See Id. at ¶¶ 40-52.

The suspicious timing of the conveyances is also a badge of fraud. Nicklin initiated the $1.5 million June 7, 2012 transfer less than one month after Plaintiff informed him that C.L. King would liquidate his account. Id. at ¶¶ 18, 33. During that same month, Plaintiff alleges Nicklin transferred land and money to his wife in addition to "numerous other asset transfers to his family members and to other individuals" for the same purpose of evading his debt obligations. Id. at ¶¶ 45-52. Plaintiff has adequately alleged the existence of "badges of fraud" sufficient to show Nicklin's actual intent to, if not defraud his creditors, hinder or delay the collection of his debt obligation to them. The Court will therefore deny the motion in

17

this respect.

**F.  Count 5**

Defendant seeks to dismiss Count 5 of the Amended Complaint. Plaintiff brings this cause of action pursuant to DCL § 276-a, which provides for the plaintiff's recovery of reasonable attorneys fees in a successful fraudulent conveyance action.  N.Y. Debt. & Cred. Law § 276-a.  Section 276-a requires the conveyance "to have been made by the debtor and received by the transferee with actual intent . . . to hinder, delay, defraud . . . creditors."  Id.  As addressed above, Plaintiff has adequately alleged Nicklin's actual intent to hinder, delay, or defraud C.L. King by making the challenged conveyances to Defendant.  To recover attorneys fees, however, Plaintiff must also demonstrate such intent on the part of the transferee, Northwestern.

Northwestern's involvement in Nicklin's "scheme" to avoid his debt obligation to Plaintiff began on or about June 5, 2012 when Nicklin requested his insurance agent identify the policy loans he "should repay."  Am. Compl. at ¶ 31.  Plaintiff alleges that at this time "Nicklin was aware that he owed C.L. King at least $13,097,946.12" and "made this request as part of an effort to determine how best to protect his assets from his creditor."  Id.  Plaintiff fails, however, to plead with particularity that Defendant offered its advice with actual intent to hinder, delay, or defraud C.L. King.  The conclusory allegation that Defendant "advis[ed] Nicklin how to most effectively benefit Defendant and himself while preventing C.L. King from reaching his assets," does not meet the heightened pleading standard of Rule 9(b). Id. at ¶ 39.

18

The "badges of fraud" that suggest Nicklin's actual intent do not apply equally to Defendant. Plaintiff does not allege any facts that suggest Northwestern was aware of Nicklin's insolvency or his outstanding debt to Plaintiff. Instead, Plaintiff apparently relies on the suspicious timing of the request, shortly after the liquidation of Nicklin's C.L. King account, as an indication of intent. See Id. at ¶ 31. Without knowledge of that debt obligation, however, the "suspicious timing" badge of fraud cannot apply. There is nothing inherently suspicious about an insurance client requesting advice on the repayment of policy loans. Defendant contends that "the [p]olicy [l]oan carries and accrues an annual percentage rate of interest that may be capitalized upon the principal outstanding policy debt." The holder of a policy loan, therefore, might seek advice on the order in which to repay his loans to minimize interest payments. Further, Plaintiff does not allege that Defendant was involved in any other aspect of Nicklin's "scheme" or had any knowledge of the alleged plan. As such, the "existence of a pattern" badge of fraud is likewise inapplicable. The numerous other conveyances alleged as part of Nicklin's "scheme" also suggest a lack of involvement by Defendant. Plaintiff does not allege Northwestern advised Nicklin on any of the other aspects of his "scheme" nor do the alleged facts suggest the company gave any such advice. See id. ¶¶ 40-52. The Court will therefore grant the motion in this respect without prejudice to repleading because Plaintiff may be able to allege additional facts supporting "badges of fraud" indicative of Defendant's actual intent to defraud, hinder, or delay C.L. King by advising Nicklin on the repayment of his policy loans.

**G.     Other Issues Raised by Defendant**

19

Defendant offers several additional arguments for dismissing Plaintiff's claims, which the Court will address in turn.

### i.   Proceeds and Avails Exemption Under Insurance Law § 3212(b)

Defendant also argues that Plaintiff cannot recover any of the funds from the insurance polices because that remedy is not available under New York law. Defendant cites New York insurance law to argue that, absent actual intent to defraud under the DCL, the "proceeds and avails" of Nicklin's life insurance policy are exempt from creditors.  New York law provides that "[i]f a policy of insurance has been or shall be effected by any person on his own life in favor of a third person beneficiary . . . such third person shall be entitled to the proceeds and avails of such policy as against the creditors . . . of the person effecting the insurance." N.Y. Ins. Law § 3212(b)(1).  "Under New York law," then, "a creditor may collect from life insurance proceeds only 'the amount of premiums or other consideration paid with actual intent to defraud creditors as provided in" the DCL "together with interest on such amount."  U.S. v. Bushlow, 832 F.Supp. 574, 584 (E.D.N.Y. 1993). Thus, without "actual fraud life insurance proceeds are exempt from collection, and proof of constructive fraud is insufficient for a creditor to overcome the exception." Id.

The Court will deny the motion in this respect as well.  Plaintiff has here, as explained above, alleged actual fraud.  Section 3212(b) only protects the proceeds and avails of an insurance policy when there is no actual intent to defraud.  See NY Ins. § 3212(e)(1) ("Every assignment or change of beneficiary or other transfer is

valid, except in cases of transfer with actual intent to hinder, delay or defraud creditors, as defined in article ten of the debtor and creditor law. In such cases creditors shall have all the remedies provided by such article ten."). As Plaintiff here has sufficiently alleged actual intent to hinder, delay or defraud, this section of the insurance law provides Defendant no protection. The Court will deny the motion in this respect as well.

### ii. Absence of Extrinsic Fraud

Defendant also seeks dismissal of the Amended Complaint due to Plaintiff's failure to allege evidence of "extrinsic fraud." Defendant argues that a plaintiff must allege some sort of fraud outside of the repayment of policy loans to allege a fraudulent conveyance in this action. In <u>Schwartz</u>, the court refused to make a finding of actual intent to defraud[6] "in the absence of evidence of extrinsic fraud." <u>Schwartz</u>, 153 F.2d at 337; <u>see</u> <u>Forsberg v. Security State Bank</u>, 15 F.2d 499, 502 (8th Cir. 1926) ("there must appear in evidence some facts or circumstances which are extrinsic to the mere facts of [conversion] of nonexempt assets into exempt and which are indicative of such fraudulent purpose").

As explained above, Plaintiff's Amended Complaint alleges conduct involving more than the mere transfer of funds related to the insurance policies in alleging fraud. Plaintiff alleges that the transfers served not simply the purpose of repaying the insurance policies and protecting the interests of the policy

―――――――――――――――

[6] As the extrinsic fraud requirement only applies to actual intent, this argument is inapplicable to Plaintiff's claims of constructive fraudulent transactions relying on DCL §§ 273, 273-a, and 274.

beneficiaries, but also served another purpose–avoiding Nicklin's creditors.  The Court has pointed to alleged "badges of fraud" indicative of Nicklin's actual intent to prevent Plaintiff from recovering the debt he owed.  Among the badges of fraud that the Court relies on in making its decision are the suspicious timing of the transactions and the existence of a pattern after the debt had been incurred. Plaintiff's allegations of a "scheme to evade creditors" indicate an overall fraudulent purpose.  These allegations include Nicklin's formation of entities used to shield his assets from Plaintiff, referenced by name, and approximate dates and amounts of the other conveyances that Plaintiff contends were a part of this scheme.  See Am. Compl. at ¶¶ 40-52.  These other acts, as part of Nicklin's alleged scheme, indicate his actual intent to hinder, delay, or defraud Plaintiff by the conveyances at issue in this case.  A number of the other transfers are subject to litigation in other courts, see id. at ¶¶ 42, 49, 51, and Plaintiff need not allege these instances of fraud with the particularity required of the conveyances challenged in this Court.  Plaintiff has adequately alleged the existence of extrinsic fraud required for the Court to find Nicklin acted with actual intent to hinder, delay, or defraud C.L. King.  The Court will deny the motion in this respect.

### iii.    Money Judgment

Defendant next contends that Plaintiff is not entitled to money damages in this matter.  The usual remedy in fraudulent conveyance cases, Defendant argues, is limited to rescission[7] and setting aside of the conveyance.  Plaintiff has not

_____

[7]Rescissory damages are "[d]amages contemplated to restore a plaintiff to the position occupied before the defendant's wrongful acts."  Bryan A. Garner, ed., BLACK'S

alleged any condition that would permit the Court to vary this rule, Defendant

argues, and the relief that Plaintiff seeks is therefore unavailable.  Plaintiff responds

that the Amended Complaint seeks either to set aside the payment Nicklin made to

Northwestern, or a money judgment.  Indeed, Plaintiff argues, the remedy sought

here amounts to rescission.  The funds should be returned to C.L. King, Plaintiff

argues, because doing otherwise would permit Nicklin to continue his fraud by

other means.  Defendant responds by agreeing that Plaintiff could be entitled to the

remedy of rescission if Plaintiff proves a fraudulent conveyance.  Defendant

argues, however, that the facts alleged in this case do not indicate that

Northwestern disposed of Nicklin's assets and Plaintiff's remedy is therefore limited

to rescission.

  "The statutory remedies available for the conveyance of property to remove

it from the reach of a potential judgment creditor are limited to placing the parties in

status quo *ante*."  <u>Blakeslee v. Rabinor</u>, 182 A.D.2d 390, 392 (1st Dept. 1992).  "As

a general rule, the relief to which a defrauded creditor is entitled in an action to set

aside a fraudulent conveyance is limited to setting aside the conveyance of the

property which would have been available to satisfy the judgment had there been

no conveyance."  <u>Joslin v. Lopez</u>, 309 A.D.2d 837, 839 (2d Dept. 2003).  "A money

judgment against the transferee may also be an available form of substitute relief

where the transferee has disposed of the wrongfully conveyed property in some

manner which makes it impossible to return."  <u>Id.</u>  "A personal judgment against the

_____

LAW DICTIONARY (8th Ed., 2004)

transferee of a fraudulent conveyance may be obtained where the transferee has made it impossible to return the property to the creditor by, for example, disposing of wrongfully conveyed property or depreciating it." <u>Federal Deposit Ins. Corp. v. Heilbrun</u>, 167 A.D.2d 294, 294-295 (1st Dept. 1990).

The Court will deny the motion with leave to renew at an appropriate time in this matter. As explained above, Plaintiff has stated claims for fraudulent conveyance on various bases. The normal remedy for a fraudulent conveyance is return of the property so conveyed and restoration of the parties to the position they were in before that act of fraud. Still, changes in the status of the property or other particular circumstances may make such rescission impossible. Under such circumstances, a money judgment may be in order. The Court will wait for the evidence to be collected before dismissing particular remedies.

### H.     Non-joinder of Nicklin

Defendant also argues that the Court should dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(7) for failure to name an indispensable party. The Federal Rules of Civil Procedure require dismissal of an action when a plaintiff fails to name such a party. <u>See</u> FED. R. CIV. P. 19. "Fed.R.Civ.P. 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party. First, the court must determine whether an absent party belongs in the suit, i.e., whether the party qualifies as a 'necessary' party under Rule 19(a)." <u>Viacom Intern., Inc. v. Kearney</u>, 212 F.3d 721, 724 (2d Cir. 2000). A person is a required or necessary party when:

(A) in that person's absence, the court cannot accord complete relief among

24

existing parties or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a). If a party is necessary, but joinder is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).[8] In other words, the Court must dismiss the action if the party not joined is "indispensable." <u>Viacom Intern.</u>, 212 F.3d at 725. Rule 19(b) sets out four factors for the Court to consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice [the necessary party] or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b). In making this determination, the Court should take a flexible approach: "a mechanical determination of who is an indispensable party is clearly inappropriate." <u>Prescription Plan Services Corp. v. Franco</u>, 552 F.2d 493, 496 (2d Cir. 1977). Rule 19(b) "does not require that every factor support the district court's determination." <u>Universal Reinsurance Co., Ltd. v. St. Paul Fire and Marine Ins.</u>

---

[8] Plaintiff argues that, because Nicklin's joinder would deprive the Court of subject-matter jurisdiction, he "need not be joined under Rule 19(a) and no further inquiry is required." Pl.'s Mem. in Opp. at 23. This argument conflates two steps of the Rule 19 analysis. The Court must first determine whether Nicklin is a necessary party. Whether his joinder would deprive the Court of subject-matter jurisdiction is only relevant to the feasibility of joinder, not Nicklin's necessity as a party.

Co., 312 F.3d 82, 88-89 (2d Cir. 2002). It follows that, "very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." Jaser v. New York Property Ins. Underwriting Ass'n, 815 F.2d 240, 242 (2d Cir. 1987).

The Court finds that Nicklin is not a "necessary" party to this action. Defendant argues that Nicklin will be prejudiced by Plaintiff's attempt to attach the "proceeds and avails" of his insurance policy. This argument is an extension of the argument that the money Plaintiff seeks to recover is protected by New York Insurance Law. The Court has rejected that argument. It is possible to accord complete relief in Nicklin's absence. Nicklin may claim an interest in the policies themselves, but his ability to protect that interest is not practically impaired or impeded by the disposition of this case in his absence.

Even if Nickin were "necessary," it does not follow that he is an "indispensable" party. If necessary, joinder would not be feasible because both Nickin and Plaintiff are citizens of New York and, therefore, joinder would destroy diversity. However, dismissal for nonjoinder of a nondiverse party should be avoided unless just resolution of the action is otherwise impossible. Defendant and Northwestern both have identical interests in the outcome of this action. Both seek the conveyances to be left alone and it is not clear what additional arguments Nicklin himself could make. The money Plaintiff seeks to recover is no longer in Nicklin's possession and (accepting the allegations of insolvency as true) would be extremely difficult to recover from him in any event. Additionally, this case is only in

federal court due to Defendant's choice to remove it from state court. While not determinative, choosing to remove the case to federal court and then seeking dismissal on these grounds does not weigh in Defendant's favor. The Court will therefore deny the motion in this respect.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant Defendant's motion to dismiss in part and deny the motion in part, as follows:

1.    The motion is hereby **GRANTED WITH LEAVE TO REPLEAD** with respect to Plaintiff's claim for attorney's fees under DCL § 276-a.

2.    The motion is hereby **DENIED** in all other respects.

Should Plaintiff choose to replead the cause of action dismissed without prejudice, Plaintiff should file an Amended Complaint within twenty-one (21) days of the date of this Order.

**IT IS SO ORDERED.**

Thomas J. McAvoy
Senior, U.S. District Judge

Dated: July 3, 2019